Rebecca K. Smith
Public Interest Defense Center, P.C.
P.O. Box 7584
Missoula, MT 59807
(406) 531-8133
publicdefense@gmail.com

Timothy M. Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, | CV-21-105-DLC-KLD |
| Plaintiff, | DECLARATION OF MICHAEL GARRITY |
| vs. | |
| NATHAN GASSMAN, et al., | |
| Defendants, | |
| and | |
| AMERICAN FOREST RESOURCE COUNCIL, et al, | |
| Defendant-Intervenors | |

Pursuant to 28 U. S. C. § 1746, I, Michael Garrity, declare under penalty of perjury that the following is true and correct.

1. I am the Executive Director of Plaintiff Alliance for the Wild Rockies.

2. Alliance for the Wild Rockies is a tax-exempt, non-profit public interest organization dedicated to the protection and preservation of the native biodiversity of the Northern Rockies Bioregion, its native plant, fish, and animal life, and its naturally functioning ecosystems. Its registered office is located in Missoula, Montana. The Alliance has over 2,000 members, many of whom are located in Montana. Members of the Alliance observe, enjoy, and appreciate Montana's native forests and wildlife, and expect to continue to do so in the future, including in the area affected by the Ripley Project.

3. I am a fifth generation Montanan and have spent my entire life visiting National Forests with my family. The sad truth is that cleared roadways behind gates and berms attract a variety of different types of Forest users, and motorcycles can simply drive over or around berms or around gates, individuals fill in ditches and drive over them, and individuals repeatedly rip out gates and drive past them. Regardless of whether the intended use of the closed road is hunting, mushroom-picking, firewood gathering, huckleberry gathering, camping, or simply pleasure riding, these roads are consistently used by motor vehicles despite closures and gate or berms at the start of the road. Additionally, the berms are simply piles of dirt, and they erode away over time from rain and other natural forces. Although these chronic problems are well-known by locals and forest users, in court filings and formal agency analyses the Forest Service generally pretends that this pervasive and chronic problem does not exist. Although the Cabinet-Yaak grizzly population has not gotten anywhere near recovery in over 40 years of federal management, the Forest Service generally denies that its management activities have played any role in this failure.

4. The continued existence of the imperiled Cabinet-Yaak grizzly bear population is a significant concern to Alliance's members. The Grizzly Bear Recovery Plan requires 100 bears for the minimum viable population, but the most recent count in the record is 45 live bears (50 bears counted less 5

bears known to be dead). The prior year's count was 50, and the prior year's count was 54. Additionally, the Cabinet-Yaak grizzly population is failing every recovery target: the target for females with cubs, the target for distribution of females with cubs, the female mortality limit (which is zero mortalities until a minimum of 100 bears is reached), and the mortality limit for all bears (also zero mortalities until a minimum of 100 bears is reached). Over the last three monitored years, the human-caused mortality rate was 2.67 bears killed per year. Humans killed two female Cabinet-Yaak grizzly bears in 2020. A peer-reviewed published study, Kendall et al. (2016), analyzed the Cabinet-Yaak grizzly population in detail based on extensive and systematic DNA collection in the region and found: "In the small Cabinet and Yaak populations, the difference between growth and decline is 1 or 2 adult females being killed annually or not." Kendall et al. further found: "the small size, isolation, and inbreeding documented by this study demonstrate the need for comprehensive management designed to support [] population growth and increased connectivity and gene flow with other populations." Similarly, as noted by Dr. David Mattson, a preeminent grizzly bear research scientist in Montana, "the entire corpus of research produced on viability of isolated or semi-isolated populations of bears and other large long-lived mammals shows that populations of 50-100 animals are acutely vulnerable to extinction (50-95% likely) over a relatively short period of time (100 years or less . . . )." Thus, "an increased loss of even 1 adult female bear every 2-5 years can dramatically escalate risks of population extirpation . . . ."

5. The fact that this grizzly population is "acutely vulnerable to extinction" is alarming. In this case, the Forest Service's failure to provide adequate protections and analysis for the imperiled Cabinet-Yaak grizzly bear is irreparably harming the Alliance's members' interests in the survival and recovery of these grizzly bears, including but not limited to their interests in looking for, viewing, and studying grizzly bears, including in the Ripley Project area. In the past 5-7 years, grizzlies have slowly started to use this Project area – there is undisputed evidence of at least three radio-collared grizzly bears traveling through the Project area on a recurring basis. However, the dramatic increase in roads in this Project area, the 25-year duration, the thousands of acres of commercial logging, and the cumulative effects from private industrial logging and State logging, will degrade the habitat to the point that it will almost certainly displace grizzly bears – perhaps for generations – and almost certainly prevent any future voluntary

designation of this area as a protected BORZ area. The Recovery Plan finds that roads pose an imminent threat to grizzly bears. Additionally, the Recovery Plan finds that "[t]imber management programs may negatively affect grizzly bears by (1) removing thermal, resting, and security cover; (2) displacement from habitat during the logging period; and (3) increases in human/ grizzly bear confrontation potential or disturbance factors as a result of road building and management. New roads into formerly unroaded areas may cause bears to abandon the area." AR_1026:010222. Additionally, the history of illegal motorized use and ineffective closures, the failure to analyze the factors in the Travel Management Rule, and the lack of funding to carry out promised road storage activities all undermine claims that the Forest Service will effectively mitigate impacts to these grizzlies.

6. In January 2021, FWS produced its Species Status Assessment for grizzly bears. The assessment concludes that the Cabinet-Yaak grizzly population has "low" resiliency, which means a low ability for populations to persist in the face of stochastic events, or for populations to recover from years with low reproduction or reduced survival. As noted in Kendall et al., the Cabinet population would likely be extinct without artificial augmentation (i.e. trapping grizzly bears from other areas and trucking them into the Cabinets). FWS's Species Status Assessment finds that the only circumstance under which the Cabinet-Yaak grizzly population would increase to "high" resiliency would be with a significant increase in conservation measures.

7. These circumstances are alarming. We have been fighting hard for decades to create the Access Amendments, to enforce those protections, and to expand those protections to grizzly bears in line with the best available science and evidence of recurring grizzly use. With every challenge we mount, we are maligned by politicians, special interest groups, and the agencies; nonetheless we persist because the value of an endangered species is incalculable. We have a historic and long-term decades-long commitment to protecting grizzly bears in the Northern Rockies. When federal agencies refuse to comply with federal law they must be held accountable – particularly when their refusal to comply with the law is preventing recovery of an endangered species and may well be pushing that species further down the line to extinction.

8. In addition to the specific harms to lynx and grizzly habitat, grizzly bears, and Plaintiff's interests in lynx and grizzly bears, the Project also poses

irreparable harm to the forest itself. Plaintiff's members use the Kootenai National Forest, including the areas subject to logging under the Project, for work and recreational purposes, such as hiking, nature study, wildlife observation, and quiet contemplation in nature, and other activities. Plaintiff's members' interests will be irreparably harmed by the Ripley Project. In particular, the Project will harm Plaintiff's members' ability to view, experience, and utilize the areas in their undisturbed state. The Project will irreparably harm the Alliance's members' interests in the naturally functioning ecosystems of the Forest and Project analysis areas, in particular their interests in looking for, viewing, studying, and enjoying grizzly bears, lynx, and other wildlife species undisturbed in their natural surroundings. The challenged activities will prevent Alliance's members' use and enjoyment of the natural areas in the area in its undisturbed state for this purpose.

9. Alliance's members and I intend to continue to use and enjoy the lands within the Project analysis areas, frequently and on an ongoing basis in the future.

10. The Project threatens myself and the Alliance, and its members with concrete and particularized injury to our esthetic, recreational, scientific, spiritual, vocational, and educational interests in the area and the wildlife in that area, including grizzly bears, lynx, mature forests and other wildlife species. Logging, burning, road-building, road use, and road reconstruction harm these interests. These types of ecological and esthetic degradations will render the area unsuitable for our own esthetic, recreational, scientific, spiritual, vocational, and educational activities, which include wildlife observation and study, hiking, camping, and quiet contemplation in nature. Therefore, my interests and Alliance's members' interests in viewing the flora and fauna of the area would be irreparably harmed if operations went forward without complying with the substantive and procedural ecological protections guaranteed under the ESA, NEPA, and NFMA.

11. The above-discussed threats will be caused by the Project. Therefore, a favorable judicial decision will prevent or redress these injuries, because it will enjoin the activities that will harm my, and Alliance's members' esthetic, recreational, scientific, spiritual, vocational, and educational interests.

12. In conclusion, my interests and the interests of Alliance and its members, have been harmed by the Defendants' approval and/or implementation of the Project.

13. These harms are actual and imminent. On April 20, 2022, the Forest Service informed us, through our attorney, that Project activities could proceed as soon as June 1, 2022. If operations are allowed to proceed as planned, the area will be irreversibly degraded because once logging occurs, the Forest Service cannot put the trees back on the stumps, and our interests in the area will be irreparably harmed to the point that the area is no longer adequate for our esthetic, recreational, scientific, spiritual, vocational, and educational interests. In other words, this area will never look or be the same during the lifetimes of our members. Additionally, regarding our interests in grizzly bears, the displacement of grizzly bears during the 25-year Project duration may cause grizzlies to avoid the area for generations afterwards since this type of avoidance behavior is a learned behavior that is passed on to cubs  Therefore, if the Project is implemented, grizzly bears may not occur in the Project area again during the lifetimes of our members. Therefore, this specific project will likely cause irreparable damage to our members' interests because it will harm our members' ability to view, experience, and utilize the area in its undisturbed state and thus prevent the use and enjoyment by our members of hundreds of acres of the Forest. This is the same type of harm to our members posed by the Rat Creek Project on the Beaverhead-Deerlodge National Forest and the Ninth Circuit agreed that such harm is irreparable for the purpose of requesting a preliminary injunction in *Alliance for the Wild Rockies v. Cottrell.*

Dated this 29th Day of April, 2022.

*Michael Garrity*

Michael Garrity, Executive Director
Alliance for the Wild Rockies